FILED
 2020 Nov-09 PM 04:14
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEGHAN BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 2:19-cv-00972-JHE |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Meghan Baker ("Baker") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc. 1). Baker timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I. Factual and Procedural History**

On April 27, 2016, Baker protectively applied for a period of disability, DIB, and SSI, alleging she became disabled beginning February 20, 2016. (Tr. 76, 78, 167-84). Baker's applications were denied at the initial level. (Tr. 60-103). Baker then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 107-08). A hearing was held on February 20, 2018 (tr. 36-59), and the ALJ issued an unfavorable decision denying Baker's claim on July 2, 2019 (tr. 7-21). Baker sought review by the Appeals Council, but the Appeals Council declined her request

on April 26, 2019. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On June 24, 2019, Baker initiated this action. (*See* doc. 1).

Baker was thirty-two-years-old on the date of the ALJ's decision. (Tr. 21, 167). Baker has at least a high school education (tr. 43, 226) and last worked in 2016. (tr. 44, 208). Baker's past relevant work includes working as a waitress, childcare attendant, and licensed practical nurse. (Tr. 43-44, 55-56, 231-38). Baker generally alleges she is disabled because of anxiety, bipolar disorder, and severe depression. (Tr. 45-46, 225, 255, 257). Baker's counsel conceded at the administrative hearing that Baker was not alleging any physical impairments. (Tr. 40-41).

## II. Standard of Review[1]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[1] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Baker met the insured status requirements of the Social Security Act through December 31, 2019 (her date last insured or "DLI"), and that Baker had not engaged in substantial gainful activity since her alleged onset date of February 20, 2016. (Tr. 12). At Step Two, the ALJ found Baker has the following severe impairments: bipolar [disorder] and depression. (*Id.*). At Step Three, the ALJ found Baker did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-15).

Before proceeding to Step Four, the ALJ determined Baker's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Baker had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: can work in a low stress

work environment, defined as: tasks that are simple and routine in nature, with no inflexible or fast-paced production requirements (such as assembly line work), and no more than occasional changes in work setting; can tolerate occasional interaction with the public and with coworkers; and can accept instructions and respond appropriately to supervisors, where this interaction occurs occasionally throughout the workday. (Tr. 16-19).

At Step Four, the ALJ determined Baker was unable to perform any past relevant work. (Tr. 19). At Step Five, the ALJ determined, based on Baker's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Baker could perform. (Tr. 19-20). Therefore, the ALJ determined Baker had not been under a disability and denied Baker's claim. (Tr. 20).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Baker challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ failed to properly articulate good cause for according less weight to the opinion of Baker's treating physician, Dr. Rachel Julian (doc. 13 at 6-15); and (2) the ALJ failed to properly evaluate the credibility of Baker's complaints consistent with the Regulations and the Eleventh Circuit Pain Standard, (*id.* at 15-20).

5

### A. Whether the ALJ failed to properly articulate good cause for according less weight to the opinion of Baker's treating physician, Dr. Rachel Julian

An ALJ considers numerous factors when evaluating a doctor's opinion, including whether the doctor is treating the claimant, whether the doctor supported his or her opinion with evidence, whether the doctor's opinion is consistent with the record as a whole, and facts relating to the treating relationship. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).[3] A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for not giving a treating doctor's opinions sustained or considerable weight. *See id*. §§ 404.1527(c)(2), 416.927(c)(2); *Hargress v. Soc. Sec. Admin. Comm'r*, 883 F.3d 1302, 1306 (11th Cir. 2018). Generally speaking, opinions are entitled to more weight when they are supported by the doctor's own records and consistent with the records as a whole. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). An ALJ may discount a treating doctor's opinion, when (1) no evidence bolsters the opinion, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the doctor's own medical records. *See Hargress*, 883 F.3d 1302.

### 1. Dr. Rachel Julian's Opinions

Baker argues that the ALJ failed to articulate good cause for according less weight to the opinions of Dr. Rachel Julian, Baker's treating psychiatrist from 2013 through the time of the ALJ's decision. (Doc. 13 at 7). Dr. Julian offered two opinions. First, a Mental Residual Functional Capacity ("MRFC") assessment form completed on January 3, 2018, where she indicated Baker had "marked" limitations in all areas provided. (Tr. 726). There is also a "To Whom It May Concern" letter from Dr. Julian dated January 9, 2018, stating that she treated Baker

---

[3] These rules apply because Baker's applied for benefits prior to March 27, 2017, when the Agency's "Revisions to Rules Regarding the Evaluation of Medical Evidence" became effective. *See* Notice of Proposed Rule Making, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016).

for bipolar disorder, alcohol abuse, and personality disorder. (Tr. 730). In the letter, Dr. Julian opined that Baker suffers from "frequent mood swings which would make it hard for her to remain stable enough to work consistently and that the stress of a job would increase her mood instability." (*Id.*). Baker does not challenge the weight the ALJ accorded to Dr. Julian's "To Whom It May Concern Letter." (*See* doc. 13).

The ALJ gave "little weight" to Dr. Julian's opinion that Baker had marked limitations in every category on the MRFC. (Tr. 18). The ALJ found this opinion "inconsistent with the medical record and [Dr. Julian's] latest treating records in December 2017, which noted that [Baker's] mood was improving with medication." (*Id.*). The ALJ also stated that Dr. Julian had seen Baker for the past three years, but no improvement had been noted and that treatment mainly involved renewal of medication and no long-term plan was evident in the record. (*Id.*). Baker contends these articulated reasons for discounting Dr. Julian's opinions in the MRFC are "woefully inadequate and not supported by substantial evidence." (Doc. 13 at 8).

The RMFC assessment is a prepared form. (Tr. 726-28). It has eighteen areas listed that generally address a claimant's ability to interact socially and mentally function. As noted, Dr. Julian indicated "marked" for each category, meaning "an impairment which seriously affects ability to function." (*Id.*). She also indicated "yes" that these limitations could be expected to last for twelve months or longer. (Tr. 728). However, as the Commission notes (doc. 14 at 7-8), Dr. Julian did not provide any explanation for her conclusions on the form and left the area for comments blank. (Tr. 726-28). The Commissioner contends the ALJ provided "good cause" to discount Dr. Julian's conclusions of "marked" limitations.

Both the ALJ and Baker point to Dr. Julian's treatment notes from her December 28, 2017 encounter. The ALJ merely states that this latest treating record shows that Baker's "mood was

7

improving with medication." (Tr. 18).  That is not the complete picture of the December 28, 2017 treatment note.  The Commissioner points out that Baker appeared clean and neat for her appointment, she was cooperative, she made good eye contact with no abnormal movements, and her speech was regular and affect congruent.  (Doc. 14 at 9) (citing tr. 723).  The Commissioner also emphasizes that Baker reported being in a "good" mood and denied delusions, hallucinations, and suicidal or homicidal thoughts, and she displayed oriented thought process, moderate insight and judgment, and intact cognition.  (*Id.*) (citing tr. 722-23).  However, this treatment note also indicates Baker experienced decreased energy and increased anxiety, which was noted as worse than it was at Baker's last visit.  (Tr. 722).  Furthermore, as to Baker's mood, the note explains that Baker was experiencing an increase in her depression and her medical doctor told her to take an increased amount of Tegretol.  (*Id.*).  Baker reported that increasing her Tegretol "has helped some," but her mood was noted as "same" – not improved – since her last visit.  (*Id.*).  The ALJ's conclusion that Baker's "mood was improving with medication" does not accurately capture the totality of this treatment note.  Thus, the December 28, 2017 treatment note alone, would be insufficient to support discounting Dr. Julian's opinion.

The ALJ next states that Dr. Julian had been treating Baker for the past three years, "but no improvements have been noted."  (Tr. 18).  That statement is not consistent with the record, which demonstrates that Baker's mental state has waxed and waned over the relevant time period.  (Tr. 656-62, 671-85, 688-705, 707-09, 711-20, 722-24).  Even if there were no improvements, it is unclear how this statement supports discounting Dr. Julian's opinion.

The ALJ also states that Dr. Julian's treatment "mainly involved renewal of medication" and that "no long-term plan is evident from the record." (Tr. 18).  Dr. Julian saw Baker as part of the UAB Community Psychiatry Program in the Psychopharmacology Clinic.  (Tr. 722, 730).  The

8

extensive treatment notes document routine clinical observation and medication evaluations. (*See* tr. 656-62, 671-85, 688-705, 707-09, 711-20, 722-24). Baker's treatment plan included continuing of medications, monitoring and evaluation, and encouraged physical activities, with the goal of helping Baker "from having manic episodes" and to "keep [her] depression in check." (Tr. 723). Again, it is unclear how the ALJ's statements regarding renewal of medication and a long-term treatment plan undermine Dr. Julian's opinions, and it is clear from the treatment notes that Dr. Julian did much more than simply renew Baker's medications.

The ALJ also generally states that Dr. Julian's opinion is "inconsistent with the medical records." (Tr. 18). The Commissioner argues that Dr. Julian's opinion that Baker has "marked" impairments in interacting with the public and asking simple questions or requesting assistance is undermined by Dr. Julian's record that described Baker as cooperative and as having a good mood, normal speech, intact cognition, moderate insight and judgment, and an organized thought process. (Doc. 14 at 10) (citing tr. 18, 723, 726-28). The Commissioner also argues that Dr. Julian's opinion that Baker has "marked" degrees of deterioration in personal habits and daily activities is undermined by Dr. Julian's observation that Baker was clean and neat with congruent affect, and the fact her records indicate Baker read, helped around the house, cared for her daughter, and that Baker was doing much better. (*Id.*) (citing tr. 17-18, 713, 726-28). Baker's report of a "good mood" at her December 28, 2017 appointment is misleading. Although she once colloquially reported "good" when asked about her mood, as explained fully above, under the category for mood in this treatment note, it is noted that Baker has experienced an increase in her depression, where an increased in Tegretol "has helped some," but her depression was overall the same. (Tr. 722). Baker's ability to speak and think normally with an organized thought process during an appointment with her long-time psychiatrist does not undermine Dr. Julian's opinion that she has

9

"marked" impairments in interacting with the public and asking simple questions or requesting assistance. This opinion is actually supported by the treatment note, which indicates increased anxiety and panic since Baker's last visit. As to Baker's personal habits and daily activities, on August 18, 2017, Baker appeared casually dressed and stated she lived with her mom and daughter. (Tr. 713). She stated she helped around the house, takes care of her daughter, and likes to read. (*Id.*). She was reported doing better at this appointment. (*Id.*). However, this appointment is only a snap shot and it does not appear the ALJ considered other evidence of Baker's limitations in this area. A February 3, 2017 treatment note indicates Baker spends most of the day in bed or doing light house work. (Tr. 695). Her December 28, 2016 treatment notes indicates Baker reported her depression made her not want to get out of bed. (Tr. 697). Based on a review of the treatment notes, any ability to help around the house or take care of her daughter appear sporadic and not consistent. In light of the longitudinal record, the single notation from the December 28, 2017 treatment does not undermine Dr. Julian's opinion regarding Baker's personal habits and daily activities.

### 2. Dr. Ashely Hampton's Opinions[4]

Baker also contends the ALJ erred when he accorded "great weight" to the opinions of Dr. Ashley Hampton, a consultative psychologist. (Doc. 13 at 14). The ALJ found Dr. Hampton's opinion regarding Baker's mental limitations to be "the most comprehensive and consistent evaluation of the claimant's mental functioning." (Tr. 18). The ALJ then concluded that Dr. Hampton's opinion that Baker "is not more than moderately limited in mental functioning is consistent with [Baker's] treating medical records, her reported functioning and symptoms." (*Id.*).

---

[4] Although discussing opinions from Dr. Estock, a non-examining agency psychiatrist, and Dr. Hampton, a consultative examiner, the ALJ never expressly states that anything contained in either of the opinions supported discounting Dr. Julian's opinions. (Tr. 18).

10

Dr. Hampton interviewed Baker for thirty minutes on July 13, 2016 and reviewed fourteen pages of medical records including a St. Vincent's East Discharge Summary (1 page) and History and Physical (2 pages); UAB psychiatry records (9 pages); and Disability Report Form (2 pages). (Tr. 664).  Dr. Hampton issued a five-page Mental Status Evaluation ("MSE").  (Tr. 664-68). Baker takes issue with the ALJ's characterization of Dr. Hampton's opinion as "the most comprehensive and consistent evaluation."  (Doc. 13 at 14-15).  Baker points out that Dr. Hampton's opinion was issued in July 2016, and that it did not benefit from subsequent treatment records. (*Id.*).  Additionally, Baker points out that Dr. Hampton only reviewed fourteen pages of Baker's medical records. (*Id.*).  Therefore, Baker contends, Dr. Hampton did not have a full picture of Baker's condition over time and thus could not be "comprehensive." (*Id.*).  Finally, Baker takes issue with the ALJ's failure to identify any specific records that support Dr. Hampton's opinions. (*Id.*).

The Commissioner argues the ALJ properly found Dr. Hampton's opinions the most comprehensive because of the detail and explanation provided.  (Doc. 14 at 14).  It is an accurate assessment of the record to say Dr. Julian's opinions in her MRFC were bare conclusions without comment (tr. 726-28), and Dr. Hampton's MSE included five pages of explanation regarding her interview, examination, review of records, and findings (tr. 664-68).  Opinions that are supported by relevant evidence can be afforded greater weight.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Likewise, "[f]orm reports in which a physician's obligation is only to check a box or fill in the blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993).  Thus, *if* the ALJ had cited this reason as his basis for giving more weight to Dr. Hampton's opinions than to Dr. Julian's opinions, that could support his finding.  However, the ALJ never stated that Dr. Julian's opinions were conclusory and never recognized that they were presented on a prepared

form. To the extent the ALJ found Dr. Hampton's opinions "the most . . . consistent evaluation" (tr. 18), it is unclear what he meant by "consistent." If he means consistent with the record, he did not state that or provide any examples.

The Commissioner also argues that Baker fails to point to any specific medical records from after Dr. Hampton's examination (July 2016) that conflict with Dr. Hampton's findings. (Doc. 14 at 14). This is not accurate. Baker points out the following from her treatment notes after Dr. Hampton's assessment: At her appointment later in July 2016, she reported that she only left the house for appointments and to visit family (doc. 13 at 11) (tr. 684); in October 2016, Baker reported her anxiety had increased quite a bit, specifically, had two anxiety attacks in the past week and that she had been more anxious and nervous in large crowds (*id.*) (tr. 672-73); in December 2016, Baker reported being sad, tearful, and not wanting to get out of bed for the past six months (*id.*) (tr. 697); in February 2017, Baker reported spending most of her day in bed or doing light housework (doc. 13 at 12) (tr. 695); in April 2017, Baker reported feeling depressed for two weeks, crying spells, and not wanting to be around anyone (*id.*) (tr. 690); in July 2017, Baker reported being more anxious and that she had a recent panic attack (*id.*) (tr. 709); although she reported doing better in August 2017 (tr. 713), by October 2017, Baker reported increased depression and anxiety (*id.*) (tr. 717); and, as discussed fully above, in December 2017, Baker reported continued decreased energy, anxiety, and depression (*id.*) (tr. 723).

The Commissioner is correct that Dr. Julian's MRFC opinion is conclusory. However, the undersigned cannot substitute his assessment of whether that is good cause for discounting her opinion, when the ALJ did not give that as his reason for discounting the opinion and the "good cause" the ALJ did articulate is not supported by substantial evidence.[5] As thoroughly explained

---

[5] The undersigned declines to find that the ALJ implicitly found that Dr. Julian's opinion

above, the good cause the ALJ articulated (i.e., inconsistent with medical records, the December 2017 treatment note showed improvement, etc.) is not supported by substantial evidence. On remand, the ALJ should reevaluate the weight accorded to the opinions of Dr. Julian and Dr. Hampton. Specifically, the ALJ should consider the entirety of Dr. Julian's treatment records in assessing the weight accorded her opinion. Furthermore, the ALJ should consider the subsequent treatment notes and the fact that Dr. Hampton did not review all of Baker's treatment records.

**B. Whether the ALJ failed to properly evaluate the credibility of Baker's complaints consistent with the Eleventh Circuit pain standard**

Baker contends the ALJ did not properly evaluate her subjective complaints consistent with the Regulations and the Eleventh Circuit pain standard. (Doc. 13 at 15-20). When a claimant attempts to establish disability based on her subjective complaints, she must provide: (1) evidence of an underlying medical condition; and either (2) objective medical evidence confirming the severity of the alleged symptoms; or (3) that the medical condition is of such a severity that could reasonably be expected to give rise to the alleged symptoms. 20 C.F. R. §§ 404.1529, 416.929; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, then the intensity and persistence of her alleged symptoms and their effect on her ability to work must be evaluated. 20 C.F. R. §§ 404.1529(c)(1), 416.929(c)(1); *Dyer*, 395 F.3d at 1210. When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, ALJs consider all of the evidence, objective and subjective. 20 C.F. R. §§ 404.1529, 416.929. ALJs may consider the nature of a claimant's symptoms, the effectiveness of medication, a

---

was conclusory and therefore discounted it. The undersigned declines to do so because the ALJ expressly articulated several reasons for discounting her opinion and to do so would substitute judgement for that of the ALJ and would undermine the fact that the reasons the ALJ did articulate are not supported by substantial evidence.

claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F. R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4).

In his decision, the ALJ acknowledged Baker's allegations that she is bipolar and sometimes severely depressed to the point where she could not get out of bed. (Tr. 16). The ALJ also noted that Baker stated that working caused her stress and exacerbated her symptoms. (*Id.*). However, the ALJ found that Baker's medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations; however, her statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17).

Baker's primary contention is with how the ALJ characterized her daily activities. Specifically, the ALJ cited that Baker reported her conditions did not affect her understanding and that she could independently prepare her own meals, complete household chores such as laundry, go shopping for groceries and household items in stores, and take care of her daughter by making her food and bathing her as being contrary to the presence of disability limitations. (Tr. 17). The ALJ also noted Baker reported she could independently take care of her personal care and hygiene. (*Id.*). The ALJ pointed to treatment notes where Baker reported helping around the house, taking care of her daughter, liking to read, and that she was "doing much better" to support his determination. (*Id.*).

The ALJ's discussion of Baker's daily activities omits several limitations Baker referenced when reporting her daily activities. According to Baker, she helps get her daughter ready for school, most of the time. (Tr. 51). She also reported that when she is severely depressed, her grandmother or mom comes and gets her daughter and takes her to school. (Tr. 45). Although

14

Baker reported she is able to dress herself, she also explained that she stays in pajamas when she is depressed. (Tr. 51). She also reported that sometimes she does not care to get dressed and has to be reminded to bathe. (Tr. 251). Although the ALJ says Baker reported she shops in stores, Baker indicated she cannot go to the store by herself because of her anxiety and she does not like to be around large crowds of people. (Tr. 52). In her self-completed function report, Baker indicated that she makes breakfast, takes her medicine, then takes a nap. (Tr. 250). She then fixes lunch, does some laundry, takes her medication, and takes another nap before dinner. (*Id.*). Baker's grandmother watches her daughter while she naps. (Tr. 251). Baker reported she prepares sandwiches, boxed foods, and frozen meals because she cannot focus long enough to cook a large meal. (Tr. 252). Additionally, although Baker reported doing laundry, she also reported doing it once every week or two (*id.*) and stated she shops in stores at about the same frequency (tr. 253). Baker watches television sometimes, but often falls asleep. (Tr. 254). Sometimes Baker has no interest in spending time with her family. (Tr. 254).

Although the ALJ did not solely rely on Baker's daily activities to conclude her subjective complaints were inconsistent with the record, it appears the ALJ improperly dismissed the qualifying limitations Baker placed on many of those activities. Thus, while the ALJ was trying to show inconsistencies between Baker's allegations of disability symptoms and her statements about her daily activities, such a comparison is not instructive when the reported daily activities are not accurately described. *See Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006) ("[I]t is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. The ALJ's selective description of the plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them."). Thus, the ALJ's heavy reliance on Baker's daily activities is not supported by

substantial evidence. The undersigned will not reweigh the remaining evidence. On remand, the ALJ should reconsider Baker's subjective complaints based on her reported daily activities, including the limitations she described as to those activities.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the undersigned **RECOMMENDS** that the decision of the Commissioner of Social Security denying Bakers' claim for a period of disability, disability insurance benefits, and supplemental security income is **REVERSED**, and this action **REMANDED**. A separate order will be entered.

DONE this 9th day of November, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE